UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEAN S. PIGGOTT,                              No. 05-cv-10702-NG

     Plaintiff,

     v.

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

     Defendants.

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DENNEHY'S MOTION FOR SUMMARY JUDGMENT

Kathleen M. Dennehy submits this memorandum of law in support of her motion for summary judgment.

INTRODUCTION

The plaintiff, Sean Piggott ("Piggott"), is an inmate currently in the custody of the Florida Department of Correction ("FDOC"). When he filed this suit on April 4, 2005, he was in the custody of the Massachusetts Department of Correction ("MDOC"). Ms. Dennehy is the former commissioner of the MDOC. The other defendants are the FDOC and its commissioner, James V. Crosby, Jr., and the MDOC.

Piggott filed his civil complaint on April 4, 2005. This Court issued a Memorandum and Order of Dismissal (P#5) on June 25, 2005. In its Order, the Court dismissed the FDOC and the MDOC as defendants, and it dismissed all claims against FDOC Commissioner Crosby and Ms. Dennehy in their official capacities. On January 12, 2006, on Crosby's motion, this Court dismissed the claims that had

2

been asserted against Crosby in his personal capacity.

<u>STATEMENT OF FACTS</u>

When he brought suit, Piggott was confined at the Souza-Baranowski Correctional Center in Shirley, Massachusetts. (Complaint, ¶ 1) At that time he was serving criminal sentences that had been imposed by Massachusetts courts in 1996. (Complaint, ¶¶ 6, 13) In 1999, Piggott was sent to Florida pursuant to the Interstate Agreement on Detainers, to stand trial on criminal charges pending against him in that state. (Complaint, ¶ 18) The State of Florida assigned a public defender to represent Piggott in those proceedings. (Complaint, ¶¶ 21, 26) Piggott attempted to fire his public defender in 2000. (Complaint, ¶ 24)[1] After trial, Piggott was convicted on five counts and, on February 15, 2001, the Florida court sentenced him to concurrent life sentences on each count. (Complaint, Exhibit "R") The court ordered the life sentences to be served in Florida consecutive to the sentence Piggott was then serving in Massachusetts. <u>Id.</u>

---

[1] Apparently, Piggott's effort was unsuccessful. The Public Defender's office continued to represent Piggott at trial and on appeal. See Complaint, Exhibit "S."

3

The Public Defender's Office continued to represent Piggott on appeal. An assistant public defender filed an initial appellate brief on Piggott's behalf on January 9, 2002, (Complaint, Exhibit "O"), and he filed a reply brief sometime thereafter.[2] The District Court of Appeal of the State of Florida, Fourth District, affirmed Piggott's conviction on July 31, 2002. (Complaint, Exhibit "W")

After trial and sentencing in Florida, Piggott returned to Massachusetts to continue serving his Massachusetts sentence. He asked FDOC and MDOC to provide him with Florida legal research materials. (Complaint, ¶ 30) Both agencies refused his request. (Complaint, ¶ 31) Piggott completed his Massachusetts sentence, and he was sent to Florida on August 8, 2006 to commence serving his Florida sentences. He is currently serving those sentences, five concurrent terms of life, in Florida with the FDOC.

ARGUMENT

Summary judgment may be entered if the pleadings and other materials show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In order to overcome a motion for summary judgment, the non-moving party must come forward with "specific, provable facts which establish that there is a triable issue."

---

[2] The certificate of service on the initial brief is dated January 9, 2001. This is obviously a typographical error and was meant to be 2002, since Piggott was convicted in 2001. See generally, p. 2 of the initial brief, Exhibit "O" to the Complaint.

4

Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *See* United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992).

I. The Claims For Declaratory And Injunctive Relief Are Moot.

Piggott is no longer confined in the MDOC. He completed his sentence and was sent to Florida on August 8, 2006. To the extent that he seeks permanent injunctive relief in this case, his claim is moot. Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990), cert. denied, 502 U.S. 874, 112 S.Ct. 213; Purvis v. Ponte, 929 F.2d 822, 824-825 (1st Cir. 1991) (complaint moot insofar as it sought equitable relief where inmate no longer resided at specified prison).

Moreover, under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626 (Supp. 1997), this Court may not grant prospective relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis added). *See* Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 654 (1st Cir. 1997), cert. denied 118 S.Ct. 2366 (1998). As there is no allegation of a current or ongoing violation of Piggott's rights with respect to his access to the

5

Florida courts, the PLRA prohibits injunctive relief.

This Court should also decline to entertain Piggott's request for declaratory relief. *See* DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997) ("courts have broad discretion to decline to enter a declaratory judgment.") At present, there is no "actual controversy" with respect to Piggott's access to the Florida courts, and he lacks standing to pursue his claim for a declaratory judgment. *See* Adult Video Ass'n v. U.S. Dep't of Justice, 853 F.Supp. 263, 265 (W.D.Tenn. 1994), aff'd, 71 F.3d 563 (6th Cir. 1995)(discussing "case or controversy" requirement for Art. III standing and need for "actual controversy" under federal Declaratory Judgment Act, 28 U.S.C. § 2201).

## II. The remaining civil rights claims against Ms. Dennehy should be dismissed.

This Court has already dismissed the claims asserted against Ms. Dennehy in her official capacity. *See* Order, 6/25/05. Insofar as the plaintiff seeks monetary damages against Ms. Dennehy in her individual capacity under 42 U.S.C. § 1983, she is protected by qualified immunity. *See generally*, Saucier v. Katz, 533 U.S. 194 (2001). Government officials have qualified immunity from civil damage claims under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To overcome this qualified immunity

6

defense, the plaintiff "must show that the defendants directly participated in violating (his) 'clearly established' rights." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The plaintiff bears the burden of proof on this issue, for when qualified immunity is raised, "it is the plaintiff's burden to demonstrate the infringement of a federally assured right." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992). The focus of the court's inquiry is "whether the state actor's behavior was objectively reasonable, as a matter of federal law, at the time and under the circumstances then obtaining." Crooker v. Metallo, 5 F.3d 583, 584 (1st Cir. 1993), quoting Quintero de Quintero v. Aponte-Roque, supra; Foster v. McGrail, 844 F.Supp. 16, 23 (D. Mass. 1994).

The Court must analyze the qualified immunity defense using a three-part inquiry: (1) whether the facts as alleged make out a constitutional violation; (2) whether that right was clearly established; and (3) whether a similarly situated reasonable official would have understood that her conduct violated clearly established law. Masonoff v. DuBois, 336 F.Supp 2d 54, 57 (D. Mass. 2004), citing Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003).

Here, the undisputed facts do not suggest a violation of Piggott's constitutional rights. Piggott had no right to Florida legal materials during the time he was incarcerated in the MDOC. This Court recognized, in its ruling on January 12, 2006, that Piggott was at that time, "not currently an inmate of the Florida

7

system but rather, a potential inmate." The Court further ruled that, "the Florida claims are tolled while the inmate is incarcerated out of state, under Florida law." Therefore, Piggott had no immediate need for Florida legal material to challenge his conviction and sentence. His need, if any, for those materials accrued only when Piggott began serving his Florida sentence.[3]

Moreover, even if this Court finds that Piggott had a right to begin his legal research during his confinement in the MDOC, this right was not "clearly established" and Ms. Dennehy could not have been expected to know that she had to provide Piggott with Florida legal reference materials. Piggott was a Massachusetts inmate, serving a Massachusetts sentence, and facing a Florida sentence that had not yet commenced. No clearly established law required Ms. Dennehy to provide Piggott with Florida legal materials in that situation.

Consider the following analogous situation, e.g., where a Florida inmate is serving his Florida sentence in Massachusetts under the Interstate Corrections Compact, Mass. St.1993, c. 110, § 270.[4] In that scenario, the "sending state" (Florida) would be responsible for providing access to the courts of its state. *See*

---

[3] Furthermore, counsel in Florida represented Piggott during at least a portion of his time in MDOC custody. An assistant public defender represented him at the 2001 trial and in the appeal that was decided on July 31, 2002. A prisoner has a right to either an adequate law library or legal assistance from a person trained in the law, but not both. Blake v. Berman, 877 F.2d 145, 146 (1st Cir. 1989); Messere v. Fair, 752 F.Supp. 48, 49 (D. Mass. 1990). There is no constitutional deprivation so long as the prisoner has legal counsel. *See* Harris v. Commissioner of Correction, 567 N.E.2d 906, 911 (Mass.1991).

8

Rich v. Zitnay, 644 F.2d 41 (1st Cir. 1981); Blake v. Berman, 625 F.Supp. 1523, 1525 (D.Mass. 1986). This is reasonable since the sending state is in a better position to obtain state statutes, case law, and other research materials from its jurisdiction. On the other hand, it is not feasible for the MDOC to maintain prison libraries containing legal materials for all other states that participate in the Interstate Corrections Compact. Contra, Hannon v. Allen, 241 F.Supp.2d 71 (D.Mass. 2003)(holding that both sending and receiving states share responsibility for ensuring access to courts, but denying preliminary injunction where it appeared that the sending state was making an effort to comply with its obligations).

In the present case, it is undisputed that while Piggott was in MDOC custody, he had not yet begun to serve his Florida sentence. As this Court previously ruled, he was not a Florida inmate but merely a "potential inmate." No controlling statute or case precedent applied to Piggott's situation.

As the Supreme Judicial Court of Massachusetts has stated, "To be clearly established for purposes of qualified immunity, the contours of the right allegedly violated must be sufficiently definite so that a reasonable official would appreciate that the conduct in question was unlawful." Longval v. Commissioner of Correction, 861 N.E.2d 760, 766 (Mass. 2007) (internal quotations omitted) The SJC further noted that "qualified immunity sweeps so broadly that 'all but the plainly incompetent or those who

---

[4] The compact is codified in the Appendix to Mass. Gen. L. c. 125.

9

knowingly violate the law' are protected from civil rights suits for money damages." Id., quoting Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir.1995), quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Ms. Dennehy should be accorded qualified immunity, and Piggott's claim against her for monetary damages under 42 U.S.C. § 1983 should be dismissed.

III. The state law claim against Ms. Dennehy should be dismissed.

In Count III of his Complaint, Piggott asserts a state law claim for the intentional infliction of emotional distress. (Complaint, ¶ 38) In order to state such a claim, the plaintiff must allege each of the following four elements: (1) that the defendant intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of her conduct; (2) that the conduct was "extreme and outrageous," and was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community"; (3) that the defendant's actions were the cause of his distress; and (4) that the emotional distress which he sustained was "severe" and of a nature "that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-319 (Mass. 1976); Cady v. Marcella, 729 N.E.2d 1125, 1131 (Mass. App. Ct. 2000).

Piggott does not state such a claim because he fails to allege that Ms. Dennehy's conduct was "extreme and outrageous" in any way.

10

This claim should be dismissed.

CONCLUSION

For the reasons stated herein, this Court should grant summary judgment in favor of Kathleen Dennehy, and all remaining claims against her should be dismissed.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

Date: January 9, 2008          __/s/ DAVID J. RENTSCH_____
David J. Rentsch, Counsel
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA  02110-1300
(617) 727-3300, ext. 142
BBO #544926
djrentsch@doc.state.ma.us

11

<u>CERTIFICATE OF SERVICE</u>

I, David J. Rentsch, certify that on this day I caused a copy of the foregoing paper to be mailed to each of the following persons by first class mail, postage pre-paid:

    Sean S. Piggott, B03732
      G-3115 UP
      Dade Correctional Institution
      1900 S.W. 377th Street
      Florida City, FL 33034

    Joe Belitzky, Esq.
      Senior Assistant Attorney General
      Office of the Attorney General
      The Capitol, PL-01
      Tallahassee, FL  32399-1050


Date: January 9, 2008      __/s/ DAVID J. RENTSCH_____
                                   David J. Rentsch