UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEAN S. PIGGOTT, | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Civil Action No. 05cv10702-NG |
| | ) |
| KATHLEEN M. DENNEHY, | ) |
|     Defendant. | ) |

GERTNER, D.J.:

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
May 29, 2008

Plaintiff Sean Piggott ("plaintiff" or "Piggott") brought this suit in 2005, alleging that he had been denied meaningful access to the courts by the actions of the defendant, the commissioner of the Massachusetts Department of Correction ("Massachusetts DOC"). The defendant has now moved for summary judgment, arguing both that no constitutional violation ever took place and that the defendant is, in any case, entitled to qualified immunity. See Mot. Summ. J. (document # 30).

I.    BACKGROUND

A.    Facts

As the case is before the Court on the defendant's motion for summary judgment, the Court is obliged to view the facts in the light most favorable to the plaintiff, and draw all reasonable inferences in his favor. See, e.g., Torres-Negrón v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007). To survive summary judgment, Piggott must do more than just set out allegations in his pleadings; he "must set forth specific facts

showing that a genuine issue of material fact exists as to each issue upon which [he] would bear the ultimate burden of proof at trial." Id. (internal quotation omitted).  As Piggott's complaint is signed under penalty of perjury, see Compl. at 14 (document # 1), the Court will treat it as an affidavit for purposes of summary judgment.  See 28 U.S.C. § 1746.

In 1996, Piggott was sentenced by a Massachusetts court to several terms of imprisonment.  Compl. ¶ 6 (document # 1).  While he was incarcerated in Massachusetts, on April 2, 1997, the state of Florida requested temporary custody pursuant to the Interstate Agreement on Detainers so that Piggott could face charges on unrelated cases in its courts.  See  Mot. Dismiss, Florida v. Piggott, No. 99-1402CF (Fla. Cir. Ct. filed Mar. 20, 2000), Ex. H to Compl. (document # 1).  On January 13, 1999, the plaintiff was extradited from Massachusetts to Florida to stand trial on robbery charges in Broward County.  Those charges were eventually dismissed.

On February 3, 1999, while Piggott was in Florida, he was charged in Palm Beach County, Florida with kidnapping, robbery with a deadly weapon, and sexual battery.  He was then asked to waive extradition, but declined to do so.  See Resp. Mot. Dismiss, Florida v. Piggott, No. 99-1402CF (Fla Cir. Ct. filed Mar. 30, 2000), Ex. I(A) to Compl. (document # 1).  Piggott was returned to Massachusetts, and shortly thereafter re-extradited

to Florida to face the charges in Palm Beach County.[1]  Piggott

was convicted and sentenced to life imprisonment in Florida,[2] to

be served consecutively to the Massachusetts sentence.  Sentence,

Florida v. Piggott, No. 99-1402CF (Fla. Cir. Ct. Feb. 15, 2001),

Ex. R to Compl. (document # 1).  He was then returned to

Massachusetts to serve the remainder of his Massachusetts

sentence.

In Massachusetts, Piggott asked both the Florida Department

of Corrections and the Massachusetts Department of Corrections to

provide him with Florida legal materials pertaining to his case.

Both agencies refused.  See Compl. ¶¶ 30-31 (document # 1).

Piggott also sought to have himself transferred to Florida via

writ of habeas corpus ad testificandum, but his motion for the

writ was denied.  See Order Denying Petition, Piggott v. Florida,

No. CA 02-010661 (Fla. Cir. Ct. Oct. 15, 2002), Ex. Z to Compl.

(document # 1).

---

[1] The basis for the re-extradition is unclear.  Piggott moved to dismiss
the charges based on a violation of the anti-shuffling provision of the
Interstate Agreement on Detainers.  Mot. Dismiss, Florida v. Piggott, No. 99-
1402CF (Fla Cir. Ct. filed Mar. 20, 2000), Ex. H to Compl. (document # 1).
The motion was denied.  Order on Def.'s Mot. Dismiss, Florida v. Piggott, No.
99-1402CF (Fla Cir. Ct. Apr. 11, 2000), Ex. I(B) to Compl. (document # 1).
Presumably, this is one of the habeas grounds Piggott would have sought to
assert.

[2] While Piggott repeatedly refers to these sentences as "illegal," see,
e.g., Pl. Mem. Opp. Summ. J. at 3 (document # 34), the issue of their
propriety is not before the Court, and the Court expresses no view on it.

During 2001 and 2002, however, Piggott continued to be represented by the Florida public defender's office.[3]  Through counsel, he pursued two avenues of relief in that state.  First, he moved to correct the sentence, arguing that it violated Apprendi v. New Jersey, 530 U.S. 466 (2000).  Piggott contended that his Florida sentence was increased beyond the statutory maximum by facts found only by the judge.  See Mot. Correct Illegal Sentence, Piggott v. Florida, No. 99-1402CF (Fla. App. filed June 5, 2001), Ex. P to Compl. (document # 1).  The motion was denied.  Order, Piggott v. Florida, No. 99-1402CF (Fla. App. entered Dec. 13, 2001), Ex. T to Compl. (document # 1).

Piggott also attempted to challenge his Florida convictions on direct appeal, and in connection with that challenge, sought Florida legal materials.  See Initial Br. of Appellant, Piggott v. Florida, No. 4D 01-1000 (Fla. App. filed Jan. 9, 2002), Ex. O to Compl. (document # 1).  On March 18, 2002, Piggott wrote to his counsel from prison in Massachusetts, requesting legal materials and transcripts to assist in the preparation of appeal; according to Piggott, the lawyer did not respond.  The conviction was summarily affirmed.  Piggott v. Florida, No. 4D 01-1000 (Fla. App. July 31, 2002), Ex. W to Compl. (document # 1).  Piggott

---

[3] Piggott had attempted to fire his appointed counsel during pretrial proceedings in Florida, see Mot. Dismiss Public Defender, Florida v. Piggott, No. 99-1402CF (Fla Cir. Ct. filed Oct. 16, 2000), Ex. J to Compl. (document # 1), but was apparently unsuccessful as the public defender continued to represent him.

filed a pro se motion for rehearing in which he cited transcripts, but clearly pointed out to the Florida court that he "ha[d] <u>no</u> access to Florida case law or Florida rules of the courts." See Mot. Appoint Counsel and for Reh'g at 1, 4-5, <u>Piggott v. Florida</u>, No. 4D 01-1000 (Fla. App. signed Oct. 24, 2002), Ex. BB to Compl. (document # 1). The motion was denied. Order, <u>Piggott v. Florida</u>, No. 4D 01-1000 (Fla. App. Oct. 28, 2002), Ex. CC to Compl. (document # 1).

In January 2003, Piggott again wrote to the Massachusetts Department of Corrections, requesting access to Florida legal materials to challenge those convictions. Letter from Sean S. Piggott to M. Moloney, Comm'r Dep't Corr. (stamped received Jan. 27, 2003), Ex. DD to Compl. (document # 1).[4] The plaintiff also sought a transfer to serve his sentence in Florida, but the request was denied because he had "no compelling need for [an] out of state transfer." See Inmate Classification Appeal Form (Feb. 11, 2003), Ex. JJ to Compl. (document # 1). Alternatively, Piggott sought to be transferred to the North Central Correctional Institution (NCCI) or the Worcester House of Corrections, institutions at a lower level of security than Souza-Baranowski Correctional Center. See Classification Report

_____

[4] Around this time, Piggott further sought assistance from the Harvard Law School Prison Legal Assistance Project, but to little avail. See Letter from John D. Fitzpatrick, Supervising Attorney, Harvard L. Sch. Prison Legal Assistance Project to Sean Piggott (Feb. 25, 2003), Ex. GG to Compl. (document # 1).

(Apr. 24, 2003), Ex. KK to Compl. (document # 1).  A majority of the classification board recommended that he be transferred to NCCI, but the recommendation was evidently overruled by the defendant Dennehy because of the Florida convictions.  See id.; Classification Report, Ex. LL to Compl. (document # 1) (stating that Piggott's classification appeal was "reviewed and denied; not suitable for MCI Shirley based on Life F&A sentence"). Furthermore, the Commonwealth also denied Piggott parole in part because of the Florida convictions.  See Parole Board Final Decision of August 4, 2003, Ex. MM to Compl. (document # 1). Piggott remained incarcerated in the Souza-Baranowski Correctional Center when he filed his complaint in this Court. See Compl. at 14 (document # 1).

    The plaintiff reiterated his requests for access to Florida materials to the Massachusetts DOC in January 2005.  Letter from Sean S. Piggott to Dir. of Treatment, Dep't Corr. (dated Jan. 2005), Ex. FF to Compl. (document # 1).[5]  The Department of Corrections replied, "Be advised, any requests for out of state case law should be directed to your institution['s] librarian. There are avenues to obtain information throughout all the institutional libraries and also loan programs from outside libraries."  Letter from Roland L. Rheault, Manager, Classification Division, Massachusetts Dep't of Corr. to Sean

---

[5] It is not entirely clear to whom Piggott directed this letter.

Piggott ("Rheault Letter") (Mar. 2, 2005), Ex. HH to Compl. (document # 1).  The Department also told the plaintiff that "any requests for alternate placement must be initiated at the institution via the classification process."  Id.

Piggott subsequently brought this suit.  See Complaint (filed Apr. 4, 2005) (document # 1).  However, as of October 2006, the plaintiff had finished serving his sentence in Massachusetts and had been transferred to Florida.  See Notice of Change of Address (document # 26).[6]

B.  **Procedural History**

Piggott's complaint named four defendants: the Florida Department of Corrections ("Florida DOC"), the Massachusetts Department of Corrections ("Massachusetts DOC"), James Crosby ("Crosby"), the Secretary of the Florida DOC, and Kathleen Dennehy ("Dennehy" or "defendant"), the Commissioner of the Massachusetts DOC.  The Court ordered that the claims against the Departments be dismissed in their entirety.  Mem. & Order of Dismissal (June 25, 2005) (document # 5).  It also ordered that the claims against Crosby and Dennehy be dismissed insofar as they were against the parties in their official capacities.  Id.

Both remaining defendants filed timely responsive pleadings. Dennehy answered the complaint on September 16, 2005.  See Answer

---

[6] The defendant represents Piggott's sentence finished on August 8, 2006, Def. Mem. Supp. Mot. Summ. J. ("Def. Mem.") at 3 (document # 31), but no evidence is before the Court to that effect.  The difference is immaterial.

(document # 15).  Crosby moved to dismiss the claims against him in their entirety.  The Court granted his motion.  Electronic Order (Jan. 12, 2006).

Due to a clerical error, the case was administratively closed in November 2006.  In November 2007, Piggott wrote to the Court seeking an update on the case's status; the Court took the letter as a Motion to Reopen and granted it.  Electronic Order (Dec. 13, 2007).  Dennehy subsequently moved for summary judgment on three separate grounds.  First, she argues that Piggott does not have standing to seek declaratory or injunctive relief; second, she defends against his claims on their merits; and third, she asserts qualified immunity against the suit.

## II.  <u>STANDARD OF REVIEW</u>

The plaintiff seeks relief on three separate claims; the Court reorders them for convenience.  Piggott first claims that the defendant deprived him of his right of access to the courts. Compl. ¶ 37 (document # 1).  Second, he claims Dennehy refused to transfer him to a lower-security prison.  According to Piggott, the decision was illegal, violating both state regulations and his due process rights by overriding the vote of the classification committee because of his Florida convictions.  <u>See</u> <u>id.</u> ¶¶ 32, 35-36.  Third, the plaintiff contends that Dennehy intentionally inflicted emotional distress upon him by refusing to transfer him to Florida or provide him with Florida legal

materials. Id. ¶ 38. The Court will address each of Piggott's claims in turn. It appears that the facts are essentially undisputed. See Def. Mem. Supp. Mot. Summ. J. at 6 (document # 31).

The defendant argues for dismissal based on qualified immunity. In evaluating that defense, the Court first examines whether, "[taken] in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, if the facts do state a claim for the violation of a right, the Court must consider whether the defendants were immune. Id. at 202. The inquiry is a sequential one, see id., and it would be error to grant judgment solely on qualified immunity without reaching the constitutional question. See, e.g., Wilson v. City of Boston, 421 F.3d 45, 55 (1st Cir. 2005) ("As the Saucier framework makes clear, courts must first answer the constitutional question as if there were no such thing as qualified immunity, and only then ask whether the additional protections of qualified immunity are available."); Gonzalez-Alvarez v. Rivero-Cubano, 426 F.3d 422, 430 (1st Cir. 2005) (discussing need to clarify the law).[7]

---

[7] The Supreme Court has more recently expressed doubt as to the wisdom of making this a rigid framework. See Scott v. Harris, 550 U.S. __, 127 S.Ct. 1769, 1774 n.4 (Apr. 30, 2007); Pearson v. Callahan, 128 S.Ct. 1702 (Mar. 24, 2008) (mem.) (accepting certiorari and ordering parties to brief and argue whether Saucier should be overruled). However, Saucier remains the law, and the Court is required to address the constitutional claim on its merits.

### III. <u>STANDING</u>

First, however, the Court must examine whether Piggott has standing to seek the relief he requests. <u>See</u> Def. Mem. at 4-5 (document # 31).

### A.    <u>Standing to Seek Non-Monetary Relief</u>

Piggott's complaint sought damages, injunctive relief, and a declaratory judgment. Compl. ¶ 39 (stating relief requested). Only the first is still available to him. He is now an inmate in the Florida correctional system. He has completed his Massachusetts sentence and has been transferred to Florida's custody. <u>See</u> Notice of Change of Address (document # 26). Any order to Dennehy to make Florida legal materials available to prisoners in Massachusetts is therefore moot. <u>See, e.g.</u>, <u>Purvis v. Ponte</u>, 929 F.2d 822, 824-25 (1st Cir. 1991). Nor can Piggott show that he imminently faces being incarcerated in Massachusetts without access to out-of-state legal materials. His Massachusetts sentence is over, and any potential return to Massachusetts is speculative. Furthermore, as discussed below, <u>see</u> <u>infra</u> Section V, use of the Interstate Corrections Compact would present a legal situation substantially different than the one at bar.

The plaintiff therefore lacks an "imminent" injury that is "fairly . . . trace[able] to the challenged action of the defendant." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560

(1992).  He does not have standing to seek an order from the
Court that such materials be provided to him in the future.

**B.    <u>Standing to Seek Damages</u>**

Piggott's claim for damages, though, is distinct.  A
plaintiff's standing to seek damages as a remedy for past
injuries turns (among other things) on whether he suffered an
actual injury.  Although pleading an actual injury can sometimes
be difficult for prisoner plaintiffs in access-to-courts cases,
<u>see, e.g.</u>, <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996), that is not
the case here.  Piggott has plainly alleged that Massachusetts
took account of the Florida convictions and changed the length
and conditions of his imprisonment accordingly.  <u>See</u> Compl. ¶¶
32, 34.  He further alleges that Massachusetts deprived him of
the opportunity to challenge the Florida convictions.  <u>See</u> <u>id.</u> ¶¶
30-31.

To plead an injury, <u>Lewis</u> also requires that a prisoner have
a nonfrivolous legal claim.  518 U.S. at 353 & n.3.  Piggott's
voluminous correspondence makes clear that he had at least one
definite claim.  He sought Florida authorities pertaining to the
chain of custody for a blood sample taken in Massachusetts and
transported to Florida.[8]  <u>See</u> Letter to Joseph R. Chloupek,

---

[8] It is difficult to understand what Piggott means by the "chain of
custody" issue.  If he is suggesting that blood was unlawfully taken from him
while he was in custody in Massachusetts, then the issue is more than a
technical "chain of custody" problem.  It would be a Fourth Amendment claim.
Elsewhere, by contrast, Piggott appears to have taken issue with the substance
of the expert testimony.  <u>See</u> Mot. Appoint Counsel and for Reh'g, <u>Piggott v.</u>

Assistant Public Defender, Ex. II to Compl. (document # 1);

Letter from John Fitzpatrick, Ex. GG to Compl. (document # 1).[9]

The defendant does not argue that the claim is frivolous, and at

least on this record, the Court cannot say it would be.  Since

Piggott has advanced a nonfrivolous potential legal claim,

asserted that the Massachusetts DOC "frustrated or . . . impeded"

the claim by entirely preventing his access to Florida materials,

<u>Lewis</u>, 518 U.S. at 353, and pleaded that the inability to

prosecute the claim caused him harm, he has pleaded an injury

sufficient to confer constitutional standing.

## IV.    <u>DEFENDANT'S SUMMARY JUDGMENT MOTION ON THE MERITS</u>

### A.    <u>Deprivation of Access to the Courts</u>

The plaintiff first claims that the defendant subjected him

to an increased security level and denied him parole because of

the Florida convictions.  He argues that this was illegal because

the defendant also gave him no way of challenging his Florida

convictions.[10]

The first question the Court must answer is whether this is

the type of legal action protected by the Due Process Clause of

---

<u>Florida</u>, No. 4D 01-1000 (Fla. App. signed Oct. 24, 2002), Ex. BB to Compl.
(document # 1).  In any case, the claim is not before this Court.

[9] Piggott evidently also sought materials pertaining to post-conviction
procedural requirements.  <u>See</u> Letter to M. Moloney, Ex. DD to Compl. (document
# 1).

[10] The Court liberally construes Piggott's pro se complaint.  <u>See, e.g.</u>,
<u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).

the Fourteenth Amendment.  The Due Process Clause ensures to inmates the right to "adequate, effective, and meaningful" access to the courts, Bounds v. Smith, 430 U.S. 817, 822 (1977).  The access may be provided through either an adequate law library or adequate assistance from a person trained in the law.  Id. at 828.

Thus, as an initial matter, Piggott cannot receive relief for the period during which he was incarcerated in Massachusetts, but represented by appointed counsel in Florida.  The First Circuit has held that the due process right of access to the courts is adequately safeguarded when the prisoner is receiving adequate assistance from a lawyer; he need not also have access to an adequate law library.  Blake v. Berman, 877 F.2d 145, 146 (1st Cir. 1989).  Therefore, Piggott's complaint must be limited to the approximately four-year period between the time when his appointed counsel ceased to represent him[11] and late 2006, when Piggott finished serving his Massachusetts sentence and was transferred to Florida.

Turning to the period when he did not have Florida counsel, Saucier requires that the Court first determine whether the facts alleged, if proven, would establish a constitutional injury.

---

[11] This date is not clear from the record.  However, Piggott filed a Motion to Appoint Counsel on October 28, 2002.  See Order (Nov. 26, 2002), Piggott v. Florida, No. 4D01-1000, Ex. CC to Compl. (document # 1).  As the precise date is immaterial, the Court will treat that date as the day on which Piggott was no longer represented by counsel.

It is "established beyond doubt that prisoners have a
constitutional right of access to the courts." <u>Bounds</u>, 430 U.S.
at 821.  To show an injury, as noted above, a prisoner must
"demonstrate that the alleged shortcomings in the library or
legal assistance program hindered his efforts to pursue a legal
claim." <u>Lewis</u>, 518 U.S. at 351.  Here, there is no dispute that
Piggott was seeking to pursue a concrete legal claim; he wanted
to attack his Florida conviction, based on at least one viable
claim -- the chain of custody for the blood sample taken in
Massachusetts and transported to Florida.  Nor is it contested
that Piggott never actually received Florida legal materials
while in Massachusetts, nor that those materials were necessary
to filing the action he wished to bring in Florida court.

The defendant argues that Piggott suffered no injury, and
his rights were not violated, because he was not an inmate of the
Florida system.  At the time he requested the materials, he was
solely in Massachusetts custody.  Therefore, any deprivation of
Florida materials could do Piggott no harm. It would not affect
his Massachusetts sentence, and he could challenge his Florida
convictions and sentences later.  Def. Mem. at 6-7 (document #
31).  The argument is closely related to the limitations on the
materials a prisoner's law library must contain.  As the Supreme
Court put it,

> <u>Bounds</u> does not guarantee inmates the
> wherewithal to transform themselves into

-14-

> litigating engines capable of filing
> everything from shareholder derivative
> actions to slip-and-fall claims.  The tools
> it requires to be provided are those that the
> inmates need in order to attack their
> sentences, directly or collaterally, and in
> order to challenge the conditions of their
> confinement.  Impairment of any other
> litigating capacity is simply one of the
> incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

Lewis, 518 U.S. at 355.  While the suit Piggott sought to bring

in Florida was one challenging his Florida sentence, and thus

presumptively within the scope of the right of access to courts,

the argument goes, the habeas suit would not attack the sentence

he was actually serving or the conditions of his instant

confinement.  As such, the failure to provide Piggott Florida

materials did not violate his right of access to the courts.

    This argument is untenable for two reasons.  First, the

Florida and the Massachusetts cases cannot be so easily

disentangled.  First, as noted above, Massachusetts took

Piggott's status as a Florida convict into account when setting

the conditions of his confinement.  See Classification Report,

Ex. LL to Compl. (document # 1) (stating that Piggott's

classification appeal was "reviewed and denied; not suitable for

MCI Shirley based on Life F&A sentence").  The Commonwealth also

lengthened the period of time it held him in custody, denying him

parole in part because of the Florida convictions.  See Parole

Board Final Decision of August 4, 2003, Ex. MM to Compl.

(document # 1).  Therefore, Massachusetts burdened Piggott's legal rights as a result of his Florida convictions.  In doing so, it obliged itself to allow Piggott a way to attack those convictions.  Petrick v. Maynard, 11 F.3d 991, 995 (10th Cir. 1993) (holding that Oklahoma's failure to obtain North Dakota and Minnesota materials injured prisoner because prisoner's Oklahoma sentence was enhanced due to North Dakota and Minnesota convictions).  See also Lehn v. Holmes, 364 F.3d 862, 867 (7th Cir. 2004) (holding that Illinois's use of a Maryland indictment was sufficient to oblige Illinois to provide the prisoners with a method of attacking the indictment).

Second, Massachusetts's failure to provide Piggott with Florida materials may have burdened his right to petition a federal court for a writ of habeas corpus.  As noted in a previous order by this Court, the time to file a collateral attack in Florida state court on his Florida conviction was tolled while Piggott was in custody in Massachusetts.  See Ramsey v. State, 965 So.2d 854, 855 (Fla. 2d Dist. Ct. App. 2007) (quoting Demps v. State, 696 So.2d 1296, 1298-99 (Fla. 3d Dist. Ct. App. 1997)).  However, federal law does not toll the time to file a federal habeas petition under the same circumstances, even if state law allows tolling.  See 28 U.S.C. § 2244(d)(1) (creating one-year time limit); id. § 2244(d)(2) (tolling time to file during the period in which "a properly filed application for

State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending"). And, of course, Piggott must exhaust his federal claims in state court before bringing a federal habeas petition. Id. § 2254(b)(1)(A).

Piggott's inability to access Florida legal materials might mean that he is unable to prepare all of his claims in time to file a state habeas petition and still meet the federal habeas timing rules. That is, in order to file a federal habeas petition, he must first file a state habeas petition. In order to file a state habeas petition, he presumably needs access to legal materials. And he clearly sought materials pertaining to both the substantive and procedural requirements for filing the Florida state petition. See Letter to M. Moloney, Ex. DD to Compl. (document # 1); Letter from John Fitzpatrick, Ex. GG to Compl. (document # 1). Thus, by denying him access to legal materials, the Massachusetts DOC did not allow him to take the first step in attacking his Florida convictions.

Arguably, because Piggott did not have access to the Florida materials in Massachusetts, a federal court should toll the one-year deadline until the time he began serving his Florida sentence. See 28 U.S.C. § 2254(d)(1)(B) (allowing for statutory tolling where the petitioner was prevented from filing by an unlawful state action); Shannon v. Newland, 410 F.3d 1083, 1087 (9th Cir. 2005) (noting that most cases involving § 2244(d)(1)(B)

involve claims of inadequate access to legal materials).  At
minimum, though, the burden will shift to Piggott to demonstrate
that he is entitled to tolling.  <u>Compare</u> <u>Day v. McDonough</u>, 547
U.S. 198, 208-09 (2006) (holding that the untimeliness of a
habeas petition is an affirmative defense that must be pleaded
and proven by the government), <u>with, e.g.</u>, <u>Akins v. United
States</u>, 204 F.3d 1086, 1090 (11th Cir. 2000) (placing burden
under § 2244(d)(1) on petitioner to show that state acted
unconstitutionally and caused an actual harm by preventing him
from filing the habeas petition).[12]

        Under the circumstances, the Court concludes that Piggott's
legal rights were substantially affected by his inability to

_____

        [12] Conceivably, Piggott had a way out of this situation.  Florida law
does not place the same stringent restrictions on second and successive habeas
petitions as does the federal system.  <u>Compare</u> Fla. R. Crim. P. 3.850(f) ("A
second or successive motion <u>may</u> be dismissed . . . if new and different
grounds are alleged, [if] the judge finds that the failure of the movant or
the attorney to assert those grounds in a prior motion constituted an abuse of
the procedure governed by these rules." (emphasis added)), <u>with</u> 28 U.S.C. §
2244(b)(2) ("A claim presented in a second or successive habeas corpus
application . . . that was not presented in a prior application <u>shall</u> be
dismissed unless" certain conditions, not applicable to this scenario, are met
(emphasis added)).  Thus, within one year of his Florida conviction, Piggott
could have filed a Florida state-court habeas petition based solely on federal
law in order to preserve his federal rights.  (He does not allege that he had
any difficulty gaining access to federal legal materials.)  He would thus have
exhausted his federal claims and could file a federal habeas petition within
one year, as required.  Then, after being transferred to Florida and gaining
access to Florida legal materials, Piggott could have filed a second Florida
state-court habeas petition asserting his state-law grounds for relief.
Because of his previous inability to research his claims, he would surely have
a colorable argument that the second petition was not an "abuse of the
procedure."  Critically, however, Piggott could only be held responsible for
figuring out this complicated (and still risky) procedural maneuver <u>if</u> he had
access to Florida statutes -- he otherwise had no way of knowing that Rule
3.850(f) might allow him to file the second petition.  Therefore, the only
reasonable conclusion is that Massachusetts's failure to provide Florida
materials effectively burdened Piggott's ability to pursue his federal habeas
corpus claims.

obtain Florida case law.  The next question is whether that
inability is due to the conduct of the defendant.  Surely the
Commonwealth is not required to maintain comprehensive materials
for all 50 states; it satisfies its duty if it provides a
reasonable way for prisoners to gain access to out-of-state
materials.  Cf. Johnson v. Moore, 948 F.2 517, 521 & n.2 (9th
Cir. 1991) (holding that law library with limited titles of the
United States Code Annotated and various other materials met
constitutional minimum standard).

     Unfortunately, the record does not fully disclose the
methods by which Piggott sought to gain access to the Florida
materials.  It does appear that Massachusetts correctional
institutions have protocols for obtaining out-of-state materials.
See Rheault Letter, Ex. HH to Compl. (document # 1) (informing
Piggott that "any requests for out of state case law should be
directed to your institution['s] librarian.  There are avenues to
obtain information throughout all the institutional libraries and
also loan programs from outside libraries.").  Piggott does not
discuss in his complaint or his exhibits what steps, if any, he
took to request Florida materials through these channels.  He
merely asserts that "[met] a brick wall in obtaining" them.
Classification Report, Ex. KK to Compl. (document # 1).  On the
other hand, the Commonwealth has not demonstrated that Piggott
had adequate access through interlibrary loan options.  See Rich

v. Zitnay, 644 F.2d 41, 43 (1st Cir. 1981) (suggesting that
"[w]hile undoubtedly prisoners alleging a lack of judicial access
must make a prima facie showing, the ultimate burden of proving
that the avenues of research and/or legal or paralegal aid are
adequate rests with the state").  For purposes of evaluating the
defendant's summary judgment motion, the Court assumes that
Piggott did request materials through the proper channels, but
that those requests were denied.

Therefore, the plaintiff has demonstrated that his legal
rights were substantially burdened by an inability to obtain
Florida legal materials.  Moreover, taking the facts in the light
most favorable to Piggott as the non-moving party at summary
judgment, see Saucier, 533 U.S. at 201, the Commonwealth was at
fault for failing to provide an adequate mechanism by which he
could do so.  Piggott was denied the ability to "prepar[e] and
fil[e] . . . meaningful legal papers." Bounds, 430 U.S. at 828.
The plaintiff has stated a claim for a constitutional injury.

###     B.    Violation of Due Process by Refusing To Transfer

Piggott next contends that his due process rights were
violated because the defendant refused to transfer him to a
lower-security facility, despite his eligibility for such a move.
But the "Due Process Clause does not protect [a prisoner against]
every change in the conditions of confinement having a
substantial adverse impact," even if state regulations appear to

create a positive right.  <u>Sandin v. Conner</u>, 515 U.S. 472, 478
(1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976)).
Rather, the Due Process Clause only protects against actions that
"impose[] [an] atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life." <u>Id.</u> at 484.
Here, the only harm Piggott alleges is that he was not
transferred from a maximum-security facility, the Souza-
Baranowski Correctional Center, to a lower-security facility.
There is not enough in this record concerning the conditions of
Piggott's confinement at the facility in which he is housed. As
such, Piggott's allegations do not reach the level of an
"atypical and significant hardship."  Similarly, the defendant's
denial of Piggott's request to be transferred to prison in
Florida did not constitute an "atypical and significant
hardship."  Therefore, this claim must be **dismissed** for failure
to state a claim upon which relief can be granted.

## C. <u>Intentional Infliction of Emotional Distress</u>

Piggott also seeks damages on emotional distress charges.
Compl. ¶ 38 (document # 1).  The claim is **dismissed** for failure
to state a claim upon which relief can be granted.[13]  Even
assuming that all of the plaintiff's allegations are true,
Dennehy's conduct was not "beyond all bounds of decency and . . .

---

[13] The Court does not consider the effect, if any, of 42 U.S.C. §
1997e(e) on this claim.

utterly intolerable in a civilized community." <u>Sena v.</u>
<u>Massachusetts</u>, 417 Mass. 250, 263-64 (1994) (alteration in
original) (internal quotation omitted).  Under the circumstances
of this case, it is not indecent and intolerable for a prison
official to refuse to provide out-of-state legal materials.

**V.    <u>QUALIFIED IMMUNITY</u>**

Of the plaintiff's claims, only the one for denial of access
to the courts is adequate to survive summary judgment on the
merits.  The Court must next address the defendant's argument
that she is entitled to qualified immunity.

Under First Circuit law, qualified immunity is a three-part
sequential test.  First, the Court examines whether a
constitutional violation has occurred.  <u>Carter v. Lindgren</u>, 502
F.3d 26, 30 (1st Cir. 2007).  As discussed above, Piggott has met
this aspect of the test by demonstrating that, taking the facts
in the light most favorable to him, he suffered a violation of
his right of access to the courts.  Second, the Court determines
whether the right was clearly established at the time of the
violation.  <u>Id.</u>  Finally, the Court examines whether an
objectively reasonable officer would have believed that his
action was lawful.  <u>See</u> <u>id.</u>  If so, the defendant is entitled to
qualified immunity.

At a certain level of generality, it was clearly established
that the plaintiff had a right to access to the courts, including

to the Florida courts.  See Bounds, 430 U.S. at 822.  But that
right is too abstract to allow the defendant to identify
particular situations in which it is being infringed.  Instead,
qualified immunity attaches as long as a reasonable officer could
have believed her actions to be lawful.  See Anderson, 483 U.S.
at 639-41 (discussing need to identify the right at a sufficient
level of particularity to permit the officer to understand
whether action was unlawful).

The defendant argues that the situation is "analogous" to
one in which "a Florida inmate is serving his Florida sentence in
Massachusetts under the Interstate Corrections Compact."  Def.
Mem. at 7 (document # 31). The Court disagrees that the situation
is analogous.  The Interstate Corrections Compact is clear that
the receiving state (Massachusetts, in the defendant's analogy)
is an "agent" of the sending state (Florida.)[14]  Interstate Corr.
Compact art. IV(a), codified at Mass. Gen. Laws ch. 125 app. § 2-
1(b) ¶ 2.  As a result, several courts -- including this Court
and the First Circuit -- have suggested that a receiving state

---

[14] Other courts have indicated that "[i]n the context of denial of
access claims, the general rule imposes upon the sending state authorities the
responsibility for ensuring their prisoners incarcerated in sister state
facilities are afforded access to state courts."  Clayton v. Tansy, 26 F.3d
980, 981 (10th Cir. 1993).  The First Circuit has stated, albeit in dicta,
that the sending and receiving states share responsibility.  See Hannon v.
Allen, 241 F.Supp.2d 71, 74-76 (D.Mass. 2003) (discussing obligations of
sending and receiving state in detail).  It is not clear that Florida is, in
fact, a "sending state," as it did not request Massachusetts to incarcerate
Piggott.  Cf. Messere v. Fair, 752 F.Supp. 48, 49-50 (D.Mass. 1990) (holding
Massachusetts DOC responsible for failure to provide Massachusetts materials
to Massachusetts prisoner transferred to Connecticut prison).  Because of the
disposition of the case, it is an issue the Court need not decide -- qualified
immunity would be appropriate as to the dismissed defendant Crosby as well.

might bear an obligation to provide a prisoner with access to legal materials of the sending state.  Lehn, 364 F.3d at 866-67; Hannon v. Allen, 241 F.Supp.2d 71, 74-75 (D.Mass. 2003); Rich, 644 F.2d at 43.  But see Clayton, 26 F.3d at 981.

The situation here is actually quite different: Massachusetts was not in any way acting as Florida's agent. Rather, it was imposing its own sentence on Piggott.  In doing so, it took into account the Florida sentences when deciding whether he would be paroled and what the conditions of his confinement should be.  Only a handful of cases appear to have dealt squarely with this scenario, and they do not all point in the same direction.  Compare Petrick 11 F.3d at 995 (holding that state in which prisoner was confined had some obligation to provide out-of-state materials), and Lehn, 364 F.3d at 866-67 (same), with Mitchell v. Kentuck Dept. of Corr., 234 F.3d 1269, 2000 WL 1562842, at *3-*4 (6th Cir. 2000) (table decision, text in Westlaw) (holding that prisoner confined in Kentucky without access to Louisiana materials had not stated a claim for relief because he could not show that the denial of the materials had "prevented him from being heard").  Moreover, none of the cases are from this jurisdiction, and therefore do not bind the defendant in any event.  See Wilson v. Layne, 526 U.S. 603, 617 (1999) (granting qualified immunity where plaintiffs failed to

demonstrate "any cases of controlling authority in their jurisdiction").

Thus, at the time Massachusetts refused to provide Florida legal materials to Piggott (again, taking the facts in the light most favorable to the plaintiff), the law was unsettled as to whether Massachusetts was required to provide those materials or not. Where a confining state takes an out-of-state conviction into account in determining the length and conditions of a prisoner's incarceration, the confining state must afford adequate mechanisms to obtain legal materials to challenge that out-of-state conviction. But this aspect of the right of access to the courts was not previously clearly established, and the defendant is entitled to qualified immunity.

**VI. <u>CONCLUSION</u>**

For the reasons stated above, two of the plaintiff's three claims must be dismissed for failure to state a claim upon which relief can be granted. With respect to the plaintiff's claim regarding access to the courts, his claims for declaratory and injunctive relief are moot. Furthermore, his remaining claims for damages are barred by qualified immunity. Therefore, the defendant's Motion for Summary Judgment (document # 30) is **GRANTED.**

**SO ORDERED.**

**Date:  May 29, 2008**      */s/Nancy Gertner*

NANCY GERTNER, U.S.D.C.